## EFFECT OF ANNEXATION OF "DRY" TERRITORY.

[Probate Court of Cuyahoga County.]

IN RE PETITION OF WILLIAM G. DAVIS; AND IN RE PETITION OF
C. H. FOOTE; CONTESTING THE LOCAL OPTION ELECTIONS HELD
IN THE CITY OF CLEVELAND, AUGUST 28, 1905.

Decided, August 18, 1906.

*Liquor Laws—Status of "Dry" Territory not Affected by Annexation
to a "Wet" Municipality—Brannock Law Election not Available in
Beal Law Territory—Local Option in its Legal and Practical As-
pects—Is Above Municipal Regulation, a Creature of the State and
the Will of the Voters.*

1. When an election has been held in a municipal corporation, under the
   provisions of the local option law known as the Beal Law, which
   resulted in favor of the prohibition of the liquor traffic therein, such
   prohibition continues in force, notwithstanding an annexation of the
   entire territory composing such municipality to another corporation
   in which no election has been held under the provisions of said law.
2. An election held under the residence district local option law known
   as the Brannock Law, within a part of the territory which formerly
   constituted said municipal corporation in which said Beal Law elec-
   tion was held, and within two years of the date of such Beal Law
   election, is invalid.

HADDEN, J.

The petitions in these cases disclose that elections were held
in two districts of said city, on August 28, 1905, under the act
of April 18, 1904 (97 O. L., 87, known as the Brannock law),
to determine by ballot whether the sale of intoxicating liquors
as a beverage should be prohibited within the limits of such
districts, and resulted in both cases against the prohibition.
The petitions allege that said elections were illegal for the
reason that all of the territory included within the boundaries
of said respective districts was formerly a part of the city of
Glenville, then a municipal corporation in said county, and
that on March 20, 1905, a local option election was held in said
last named city, to determine by ballot whether the sale of in-
toxicating liquors as a beverage should be prohibited therein,

under the provisions of the act of April 3, 1902 (95 O. L., 87, known as the Beal law), and that election resulted in favor of prohibition; that on July 25, 1905, the entire city of Glenville, as constituted at the time of said Beal law election, was annexed to the said city of Cleveland, and since that time has been governed as a part of said last named city. In the petition filed by William G. Davis, the further objection is made that the district described in that case, known as the 46th district as numbered by the board of elections, contained exempt territory which could not be included under the Brannock law.

The sufficiency of the first ground of contest is raised by a demurrer filed in the Foote case by the mayor of the city of Cleveland, and in the Davis case by an answer filed by the mayor, which it is intended shall be taken as a demurrer for the purpose of this hearing, so far as the first ground of objection is concerned. It will perhaps help us towards a conclusion if we can ascertain the status of the territory which constituted the city of Glenville at the time of the Beal law election, immediately after it was annexed to the city of Cleveland. The search for authorities and decisions made by counsel for petitioners has been so thorough that it can safely be inferred from the fact that no Ohio adjudications are cited by them, that none exist. Outside of this state there are several adjudications which, although not harmonious, throw some light upon the question.

In Maryland there are two cases: *Higgins* v. *State*, 64 Md., 419, and *Jones* v. *State*, 67 Md., 256. In the former it is held that the subsequent detachment of territory from a district which has voted in favor of prohibition, does not have the effect of changing the status of the territory in which the election was held, divided or undivided. In other words, all the territory of the district in which an election was held, remains "dry," no matter how it may be subsequently divided.

In Alabama, *Prestwood* v. *State*, 88 Ala., 235, it was held that where in 1880, the sale was prohibited in a certain district and afterwards, to-wit, in 1886, the proper authorities created another district out of the territory which was included in the original district, the status of the latter district continued

"dry," and a sale therein after 1886 was illegal, because the effect of the prohibitive act was to establish prohibition as the law of the district within its boundaries as it was then constituted.

In North Carolina, *State* v. *Cooper*, 101 N. C., 684, it was held that where an election was held under the local option act, in a township, and afterwards the name of the township was changed by law, this does not have the effect of repealing the local option law therein.

In Texas, *Medford* v. *State*, 45 Texas Criminal Reports, 180, and *Woods* v. *State*, 75 Southwestern Reporter, 37 (both decided May 20, 1903), the court uses this language:

"It is too well settled now for discussion, where local option has been legally put in operation within a specified territory, it must remain in force in that territory until voted out by the qualified voters of that particular territory; that no power—legislative or judicial—has authority to change the boundaries of a local option territory, so as to render inoperative the law as put into operation during its pendency in that territory. The same authority that put it into operation must annul."

And after conceding the power of the proper authorities to change the territorial limits or precincts, and create subdivisions for local option purposes, the court adds:

"But they have no authority in any event, to change the territory where the local option law is in effect, so as to annul the operation of that law or take any part of such territory from under its operation."

While this language happens to be mere dictum in the case in which it was uttered, there can be no doubt that it is the settled law of Texas.

In Georgia, however, *Drummond* v. *Lowery*, 88 Ga., 716, and *Hackney* v. *Leake*, 91 Ga., 141, a different rule seems to obtain with regard to a somewhat different subject-matter but the same in principle. It appears that two adjacent districts had voted on the subject of the stock law, or "fence" or "no fence," and one of those districts decided in favor of "fence," and the other in favor of "no fence." Later, a part of the "fence"

district was detached therefrom and added to the "no fence" district. The court held that the part so detached and attached, at once became "no fence" territory.

The foregoing are all of the adjudged cases which have been found bearing upon the particular point now under discussion. The weight of authority, then, is to the effect that when once the status of a district is established under the local option act, that status continues to exist until the power that created it puts an end to it, and that power is the Legislature and the qualified electors of the territory. It can not be ended by the judiciary or by the power which divides or annexes political divisions. If this is the law, then the territory which made up the city of Glenville at the time of the annexation continued to be "dry" after the annexation, and is "dry" yet, unless these Brannock elections have had the effect to change the status of said residence districts.

It is the contention of the petitioners that the Brannock election held August 28, 1905, is invalid because of the provisions of Revised Statutes 4364-30$i$, namely: "But nothing contained in the provisions of this act shall affect, amend or repeal, or alter in any way, any other law or ordinance which prohibits throughout the municipality, the sale," etc., "of intoxicating liquor as a beverage," etc. This is a part of the Brannock law, and its purpose is manifest, namely, to make it impossible after a local option election under the Beal law has resulted in favor of prohibition, for a Brannock law election to be held in a part of the territory in which the Beal law election has been held. If Glenville, after having voted "dry" had remained a city, a Brannock law election could not have been held therein until another Beal law election had been held, resulting in favor of the sale, and the time not being ripe for another Beal law election in that territory, there has been no time since the date of said Beal law election when a Brannock law election would have been regular.

There are two arguments in support of the mayor's position. First, by the terms of the Beatty law, R. S. 4364-28, and the Beal law, R. S. 4364-20$h$, and the Brannock law, 4364-30$i$, and the Jones law, 98 O. L., 68, it is provided that the electors of

every township, every municipal corporation and every resi-
dence district may hold another local option election "at any
time after two years from the date of any election held under
the provisions" of these acts.  Therefore, it is clearly the legis-
lative intent that the status of no territory shall be perpetually
"wet" or "dry," unless the voters make it so, and that in all
such political subdivisions, it shall be within the power of the
electors to have a local option election in every part of such sub-
division at the end of any such biennial period, if they want it.
It is argued that if this territory remains "dry" after annex-
ation, there can not be another Beal law election within it,
because it is no longer the territory of a municipal corporation,
but only a part of the territory of a municipal corporation.
Nor is it possible to hold a local option election under the pro-
visions of the Brannock law, because it is not all residence
property.

But is not this difficulty or impossibility of holding a Beal
law election in the territory formerly constituting the city of
Glenville, a practical difficulty rather than a legal one?  It is a
legal possibility for a Beal law election to be held in the city of
Cleveland, and if one should be held, every voter in every part
of what was the city of Glenville up to the instant of annexation,
would have an opportunity to vote on this issue, regardless of
whether he lives in a residence or business district.  Practically,
it may be impossible to get the requisite percentage of persons
to sign a petition for a Beal law election, but that is true now
of many of the township and the smaller municipal corpora-
tions.  The machinery created by law is the same in each place.
If the voters are not disposed to use it, it is no fault of the
law.

Second.  It is a general rule when territory is annexed to a
municipal corporation, that the annexed territory at once be-
comes subject to the ordinances and regulations of that corpora-
tion (*St. Louis Gas Light Co.* v. *St. Louis*, 46 Mo., 121).  By
analogy, it is urged that the territory which is annexed to a
"wet" municipal corporation would partake of the status of the
corporation to which it is annexed, even if the annexed territory
had been voted "dry" before annexation, and *vice versa*.

But the status of "wet" or "dry" is not created by an ordinance or by a regulation. It is the creature of a state enactment plus the will of the voters. And the condition of a municipal corporation as to local option, after the electors thereof have taken advantage of all of the opportunities which the statutes of this state now offer them, would not always be easy to figure out. It is possible, both legally and practically, for Brannock law elections to be held in residence districts of a municipal corporation constituting more than seven-eighths of the territory thereof, and for all of those elections to result in favor of prohibition, although less than half of all the electors of the entire corporation have voted for prohibtion. Would it be claimed that territory afterward annexed to such a municipal corporation would be what is commonly called "dry" territory? Certainly not; for the manifest reason that there is no regulation either by ordinance or by statute, which prohibits the sale of intoxicating liquors throughout the entire territory of that municipal corporation. So that we can have a' case under the local option laws of this state, where practically all the territory of a municipal corporation may be "dry," and such result brought about by the votes of the minority of the electors of the corporation. This situation would plainly indicate that the rule laid down in the Missouri case above cited, does not extend to the matter of local option.

Entertaining these views, it becomes the duty of the court to overrule the demurrer to the petition in the Foote case, and so much of the mayor's answer as is treated as a demurrer in the Davis case.

*Albert V. Taylor* and *T. K. Dissette*, for the petitioners.

*Newton D. Baker*, City Solicitor, for Tom L. Johnson, Mayor.

*C. M. White*, for resident electors, defending the elections.